# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MARIO M. DIMAS,**

      **Plaintiff,**

**vs.**                                                                                  **No.  08cv0194 DJS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's (Dimas's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 28]**, filed on July 28, 2008, and fully briefed on September 9, 2008.  On June 1, 2007, the Commissioner of Social Security issued a final decision denying Dimas's claim for supplemental security income payments.  Dimas seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

## I.  Factual and Procedural Background

Dimas, now forty-seven years old (D.O.B. March 30, 1961), filed his application for supplemental security income payments on October 12, 2003, alleging disability since March 12, 2003, due to degenerative disc disease, gastroesophageal reflux disease (GERD), and depression (Tr. 63).  Dimas has a twelfth grade education and two years of college.  Because Dimas had not

worked for fifteen years, as he was found disabled and entitled to Social Security disability insurance benefits in 1990, the ALJ found he did not have past relevant work (Tr. 19).[1]  However, at the time Dimas was found disabled and granted disability insurance benefits, he had past relevant work as a tile setter, warehouse laborer and mechanic.

On June 1, 2007, the Commissioner's Administrative Law Judge (ALJ) denied supplemental security payments, finding Dimas was not disabled as he retained the residual functional capacity (RFC) "to perform the full range of light work."  Tr. 18.  The ALJ further found Dimas's allegations regarding his limitations "[were] not entirely credible."  Tr. 19.   Dimas filed a Request for Review of the decision by the Appeals Council.  On December 17, 2007, the Appeals Council denied Dimas's request for review of the ALJ's decision.  Tr. 6.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Dimas seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record

---

[1] On December 30, 1990, the Commissioner determined Dimas was disabled and entitled to disability insurance benefits.  Dimas had not worked since his alleged onset date of February 20, 1985.  On January 1, 2000, Dimas's disability insurance benefits were ceased due to medical improvement and benefits were terminated as of March 1, 2000.

or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States*

*Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must

meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington*

*v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

"'The possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v.*

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200

(10th Cir. 2004)).  The court "may not 'displace the agenc[y]'s choice between two fairly

conflicting views, even though the court would justifiably have made a different choice had the

matter been before it de novo.'" *Id.* (quoting *Zolantski*, 372 F.3d at 1200).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Dimas makes the following argument: "I feel that I am being discriminated on my social security claim for disability.  I have medical proof of disabilities from doctors of the Veterans Administration."  (Docket No.  15).  Dimas, who is proceeding *pro se*,  was not represented by counsel at the administrative hearing.  However, the ALJ informed Dimas of his right to representation, but he chose to appear and testify without assistance of an attorney or other representative.[2]  Tr. 15.

---

[2]  After reviewing the record, the Court strongly recommends Dimas contact the New Mexico State Bar for an attorney referral.

In determining Dimas's RFC and in addressing his complaints of constant severe back pain, the ALJ found he was not entirely credible.  The ALJ  determined Dimas retained the RFC to perform the full range of light work.  The ALJ noted:

> This conclusion is supported by medical records from the Veterans' Administration Hospital and objective findings on x-ray and MRI studies.  These records substantiate that the claimant has a history of chronic low back pain.  However, objective findings on x-ray and MRI studies have been minimal.  X-rays studies of the thoracic and lumbar spines performed on September 20, 2004 revealed only mild degenerative disc disease, disc space narrowing and well maintained disc spaces.  MRI studies of the lumbar spine performed on September 28, 2004 documented **moderately severe discogenic degenerative changes of L4-5** (Exhibit B-3F).

Tr.  18 (emphasis added).  The September 25, 2004 MRI of the lumbar spine also demonstrated "a **markedly narrowed** intervertebral disc of L4-L5 associated with an **annular bulging disc and a smaller narrowed disc of L3-L4**."  Tr. 151.  This would support Dimas's complaints of severe back pain.  Additionally, on December 1, 2003, Audrey Eaton, M.D., a physician with the Department of Veterans Affairs, evaluated Dimas and noted spinal tenderness of the lumbar spine, positive straight leg test with the right being more severe than the left and decreased sensation to light touch of the right and left lower extremities.  Tr. 215.  Dr. Eaton diagnosed Dimas with "chronic low back pain with radiculopathy"[3] and ordered an MRI of the lumbar spine.  *Id.*  Dr. Eaton noted Dimas was getting minimal benefit with Tylenol but used Darvocet "infrequently due to his history of substance abuse and fear that he might abuse the medication."  *Id.*

---

[3] Radiculopathy is a disorder of the spinal nerve roots.  *Stedman's Medical Dictionary* at 1503 (27th ed. 2000); *see also The Merck Manual*, §14 at 1488 ("Nerve root dysfunction, which is usually secondary to chronic pressure or invasion of [a spinal nerve] root, causes a characteristic radicular syndrome of pain and segmental neurologic deficit.").

Significantly, Dimas submitted approximately 143 documents (medical records from different health care providers) to the Appeals Council that were not before the ALJ.[4]  *See*  Tr. 215-357.  These document indicate Dimas had been diagnosed with fibromyalgia (Tr. 298-299, 307, 312) and diabetes (Tr. 291-297, 302-307, 344).  On March 16, 2007, Dimas was evaluated by a podiatrist and diagnosed with peripheral neuropathy.  Tr. 307-308.  In addition, on August 14, 2006, Dr. Eaton noted Dimas had seen an "Albuquerque VA Rheum[atologist] in April 2006 for arthralgia" and was diagnosed with fibromyalgia.  Tr. 318-319, 334.

In determining Dimas's RFC, the ALJ further noted:

> Medical records from the Veterans's Administration Hospital reveal that the claimant is treated for chronic low back pain.  Physical examination performed on June 24, 2003 revealed minimal tenderness over the lumbar areas but no muscle spasm.  Straight leg raising was limited to 70 degrees on the left and 30 degrees on the right.  The doctor assessed acute and chronic back pain and prescribed Darvocet and Flexeril.  However, no further treatment modalities or diagnostic evaluations were recommended (Exhibit B-7F).

> The claimant has also been treated for bilateral foot pain diagnosed as plantar fasciitis.  However, the claimant's foot pain has been treated with cortisone shots with good relief of his pain.  The most recent medical records in the file are dated August 3, 2005.  On that date the claimant was diagnosed as having plantar fasciitis, possible gout and multiple joint pain.  The doctor recommended the claimant continue with his current medications and referred the claimant to a rheumatologist for further evaluation of his multiple joint pain.  However, there are no further medical records to document whether the claimant followed through with the recommendations.  In fact there are no medical records in the file to document ongoing treatment for any medical condition since August 2005 (Exhibit B-7F).

Tr. 18 (emphasis added).  Thus, because the ALJ did not have all of Dimas's medical records, he concluded that Dimas had not been evaluated by a rheumatologist and had not received treatment

---

[4] Although these records were not before the ALJ, they were before the Appeals Council. Tr. 6.  Therefore, the Court must consider them when evaluating the Commissioner's decision for substantial evidence.  *See, O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)(new evidence becomes part of the administrative record to be considered by the Court when evaluating the Commissioner's decision for substantial evidence).

for any medical condition since August 2005.   The records before the Appeals Council show that, in fact, Dimas had seen a rheumatologist and had been diagnosed with fibromyalgia, which would account for his complaints of multiple joint pain.   Dimas had also sought treatment in 2005, 2006 and 2007.

Based on the evidence submitted to the Appeals Council the Court cannot conclude that the ALJ's credibility and RFC findings are supported by substantial evidence.   The Court will remand this action to allow the ALJ to redetermine Dimas's RFC.   The ALJ shall assess Dimas's fibromyalgia pursuant to the standards set forth in *Brown v. Barnhart*, 182 Fed. Appx. 771 (10th Cir. May 25, 2006).   The ALJ also shall consider Dimas's diabetes and peripheral neuropathy. Additionally, the ALJ should keep in mind that Dimas's reluctance to take narcotics for his pain due to his past polysubstance abuse (Tr. 212) and his addictive personality disorder (Tr. 208) is not a basis to discredit his allegations of disabling pain.   *See Dray v. Railroad Retirement Bd.*,10 F.3d 1306 (7th Cir.1993)("A claimant is justified in not taking adequate pain medication if there is a realistic chance of addiction.").   Upon remand, Dimas's credibility must be reassessed in light of all the evidence in the record.   Finally, the ALJ should consider requesting a RFC assessment from Dimas's treating physician.

It is not this Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner.   *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1994).   The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court finds the ALJ did not apply correct legal standards and his decision is not supported by substantial evidence.   However, the Court expresses no opinion as to the

extent of Dimas's impairments, or whether he is or is not disabled within the meaning of the Social Security Act. The Court does not require any result. This remand simply assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of the case. Accordingly, Plaintiff's Motion to Reverse or Remand Administrative Agency Decision is **GRANTED**.

A judgment in accordance with this Memorandum Opinion and Order will be entered.


**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**